UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MILLER | CIVIL ACTION NO. 17-01482 |
| VERSUS | MAGISTRATE JUDGE WHITEHURST |
| COMMISSIONER OF SOCIAL SECURITY | BY CONSENT OF THE PARTIES |

**MEMORANDUM RULING**

In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to have this matter resolved by the undersigned Magistrate Judge, and it was referred to the undersigned Magistrate Judge for all proceedings, including entry of judgment. [Rec. Doc. 12]. Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Commissioner's decision is affirmed.

**Administrative Proceedings**

The claimant, Jude Leonard Miller, fully exhausted his administrative remedies before filing this action in federal court. On September 23, 2014, he filed applications for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") alleging that he became disabled on June 1, 2014. *R. 10, p. 5.* His applications were denied. *Tr. p. 17.* He requested a

hearing, which was held on August 15, 2016 before Administrative Law Judge Christine Hilleren. *Tr. p. 38*. The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from June 1, 2014 (the alleged disability onset date) through October 5, 2016 (the date of the decision). Claimant requested review of the decision, but the Appeals Council found no basis for review. *Tr. 17*. Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

**Summary of Pertinent Facts**

The claimant was born in 1973. At the time of the ALJ's decision, he was 40 years old. He went to the 10th grade, has a "limited education," *Tr. 36. 54-55,* and has relevant work experience as a rigger and crane operator. *Id.* Claimant alleged that he has been disabled since June 1, 2014 due to anxiety, intellectual impairment and alcohol abuse.

**Analysis**

A. **Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895

F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and

3

disability, and (4) the claimant's age, education and work experience. *Id.*

## B. <u>Entitlement to Benefits</u>

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). If unmarried and between fifty and sixty years old, the widow of a fully insured individual is entitled to widow's insurance benefits if she is disabled and her disability began no more than seven years after the wage earner's death or seven years after he was last entitled to survivor's benefits. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits. 42 U.S.C. § 1382(a)(1) & (2).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial

gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. Evaluation Process and Burden of Proof

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. §§ 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any

other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

### D. **The ALJ's Findings and Conclusions**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since June 1, 2014. *Tr. 20.* This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: bipolar/mood disorder with anxiety, attention deficit hyperactivity disorder, borderline intellectual functioning and alcohol dependence. *Tr. 22.* This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Tr. 23.* The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, except for the following: he is limited to performing tasks commensurate with an SVP level of two or less, with no more than occasional changes in the work setting and no more than occasional interaction with co-workers, supervisors, or the public. *Tr. 25.* The claimant challenged this finding.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work. *Tr. 36.* The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from June 1, 2014 through October 5, 2016 (the date of the decision) because there are jobs in the national economy that he can perform. *Tr. 20.* The claimant challenged this finding.

### E. The Allegations of Error

The claimant contends that the ALJ erred by improperly evaluating the medical opinion evidence.

### F. Evaluation of the Treating and Examining Physicians' Opinions

The claimant contends that the ALJ erred in failing to properly evaluate the

7

medical opinions in making her RFC assessment. More particularly, he contends that the ALJ erred in failing to provide adequate reasons for giving little weight to the opinions of Dr. C. Scott Eckholdt, Ph.D., MP, the claimant's treating physician from March 28, 2014 to April 8, 2016, and to Dr. Naomi L. Friedberg, Ph.D., the one-time examining physician. *Tr. 29, 30, 34, 35.*

The Social Security regulations and rulings explain how medical opinions are to be weighed. 20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p. Generally, an ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record. Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §

404.1527(d)(2). Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician. *Id.* …. Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *Id.* The weight given to opinions from nonexamining physicians depends on "the degree to which they provide supporting explanations for their opinions." *Id*. § 404.1527(d)(3)." *Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011)

In this case, Dr. Eckholdt performed testing (mental status exam) on the claimant on 6/13/2014. Dr. Eckholdt's report stated that claimant's "thought processes are likely to be marked by confusion, indecision, distractibility, and difficulty concentrating . . . . he is likely to be unreliable and irresponsible and has probably sustained little success in either the social or occupational." *Tr.29, 321-324*.

The claimant contends that the ALJ erred in giving Dr. Eckholdt's opinions less than full weight. He disputes her conclusion that Dr. Eckholdt's opinions were not consistent with claimant's employment history—earning up to $70,000 a year from 1992 to 2008 with significant earnings thereafter through 2014. *Id.* The claimant complains that the ALJ's opinion that the claimant had significant earning

9

activity did not address his declining wages in 2009 and 2010. *Tr. 182*. The claimant's earning levels for 2009 and 2010, however, show that he earned over $59,000 in 2009 and over $50,000 in 2010. *Tr. 179*. The Commissioner correctly pointed out that when compared to the substantial gainful activity earning levels, the claimant's earnings for 2009 through 2012 continued to be significant despite decreasing from a high of $70,000 per year. Such evidence contradicts Dr. Eckholdt's opinion that claimant "has probably obtained little success in either the social or occupational." *Tr. 29, 272*.

The ALJ further noted in her ruling that Dr. Eckholdt reported that the claimant's clinical profile was marked by significant elevations which indicated the possibility that the clinical scales may exaggerate the actual degree of the claimant's psychopathology. *Tr. 29, 272*. He found that the claimant's self-description indicated significant suspiciousness and hostility in his relationship with others. *Id.* Dr. Eckholdt also noted that the claimant reported his use of alcohol has had a higher than average, negative impact on his life. *Id.* Upon considering these observations with the claimant's significant earning activity, the ALJ concluded that that Dr. Eckholdt's opinion should be given little weight. Thus, the Court finds that the ALJ did not err in finding Dr. Eckholdt's opinion as to the claimant's lack of occupational success unsupported by the record.

Further disputing the ALJ's conclusions that Dr. Eckholdt's opinions were not consistent with his work history, the claimant testified at the hearing that he was able to keep his job as a crane operator with IE Miller only because his father was his supervisor for the majority of his employment there. He stated that his father gave him repeated chances to keep his job despite not showing up at times and losing his crane operator's license. The record, however, fails to demonstrate that Dr. Eckholdt was aware of such a situation. Even had the ALJ considered his IE Miller employment to be a "sheltered work environment," she properly considered the earnings substantial gainful activity pursuant to 20 C.F.R. § 404.1574(b)(2) ("Earnings that will ordinarily show that you have engaged in substantial gainful activity"). The ALJ also noted that the claimant had substantial gainful activity earnings from 1992 through 1998, prior to his work with IE Miller, thus further disputing Dr. Eckholdt's opinion.

The claimant also contends that the ALJ failed to consider the opinion of Naomi Friedberg, Ph.D., who examined him on July 20, 2016, on referral by the claimant's attorney. Referring to Dr. Eckholdt's notes from his evaluation of the claimant, Dr. Friedberg stated,

> A review of these notes indicate that Mr. Miller suffered with significant and often debilitating anxiety, insomnia, paranoia, irritability, and depression seemingly unrelated to his cycles of using alcohol. According to the review of written notes, Mr. Miller's adaptive

11

> daily functioning seemed to be more closely tied to the severity of his mood level and compliance with medications, rather than substance abuse and sobriety.

In her ruling, the ALJ stated that she gave "little weight" to Dr. Friedberg's opinion because she only saw the claimant once on referral from his attorney and she did not consider the claimant's significant employment history.

As with Dr. Eckholdt, the claimant alleges that the ALJ erred by stating that Dr. Friedberg failed to consider the claimant's employment history. While the claimant argues that Dr. Friedberg "considered" the employment history, the record confirms that she merely noted that "his employment experience has been mostly as a crane operator for thirteen years, hired by and working with his father who was a general manager of the company…. He also worked for a pipeline company for 2 years and on a drilling rig for 6 months." There is no indication that Dr. Friedberg had or considered information about the claimant's significant earnings and employment history. The claimant's argument that the ALJ was incorrect in giving little weight to Dr. Friedberg's opinion based on significant earning ability fails.

The claimant also contends the ALJ erred in finding that the claimant's mental impairments are insufficiently severe to cause marked or extreme functional limitations. Dr. Eckholdt found the claimant had several limitations based on the results of the March 28, 2014 mental status exam. The record provides that the ALJ

reviewed, in detail, Dr. Eckholdt's medical records consisting of twenty-one separate treatment notes, testing results, or medical opinions of the claimant over a two-year period. *Tr. 33-36.* She found that while these limitations could cause the claimant's alleged mood instability, his statements concerning the intensity, persistence and limiting effects of the symptoms were not consistent with the evidence in the record. In support she noted that this usually occurred when he was drinking. She further stated that Dr. Eckholdt had reported the claimant's mood was stable and euthymic and his affect was pleasant. She noted that he had never been hospitalized during the period at issue and that Dr. Eckholdt's opinion was despite evidence that the claimant may not have taken his medication as prescribed and continued to use alcohol to excess throughout the period in question. *Tr. 36* Based on this evidence, the ALJ found that the claimant had "moderate limitations." *Id.*

The claimant's limitations considered by the ALJ included those of thought processes affected by confusion, indecision, distractibility, difficulty concentrating, as well as being unreliable or irresponsible. *Tr. 29, 272*. The ALJ further noted the claimant's limitations of intense affect, decreased or restricted attention, poor or limited insight, impulsive behavior, distractible impulses, limited or poor judgment, low motivation, anxious, irritable or variable mood, decreased patience, limited thought process and some social conversation issues. *Tr. 27-34.*

13

In contrast to the foregoing limitations, the ALJ noted that Dr. Eckholdt's records exhibited numerous functions indicating the claimant was not as functionally limited as Dr. Eckholdt stated. Specifically, the ALJ noted Dr. Eckholdt's findings that the claimant was alert, oriented, had a pleasant affect, adequate or okay attention, adequate or okay judgment, receptive, had expressive and sufficient language skills, intact or okay memory, calm, good, stable, steady, okay or less confrontational mood, normal mental status evaluation and linear thought process. *Tr. 27-34.* The ALJ pointed to Dr. Eckholdt's conclusions that the claimant: gave less than full effort on testing; had indicators outside the normal range suggesting failure to be forthright; had greater involvement with alcohol or drugs than described; deliberate distortion of his clinical picture; possible malingering; potential considerable distortion responses unlikely to be an accurate reflection of his objective clinical status; clinical scores over-representing or exaggerating the actual degree of psychopathology. *Tr. 28-29. See Broadnax v. Barnhart*, 54 F. App'x 406 (5th Cir. 2002) (the ALJ properly considered the record indicating that the plaintiff's malingering clouded the results of psychological examinations).

The ALJ concluded that Dr. Eckholdt's opinion that the claimant had marked and serious limitations conflicted with his treatment notes, as stated in the foregoing, and was not consistent with the level of care Dr. Eckholdt had provided, therefore,

she gave "little weight" to Dr. Eckholdt's opinion. *See Kirksey v. Shalala*, 21 F.3d 1109, 1994 WL 171704, at *3 (5th Cir. 1994) (unpublished) (Where only part of a doctor's opinion is supported by the record it is appropriate for an ALJ not to afford weight to the unsupported part of the opinion). The ALJ's decision to give less weight to the opinions of treating or examining physicians is entitled to deference. *See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

The ALJ also considered the opinion of Dr. Eric R. Cerwonka based on Dr. Cerwonka's March 15, 2015 consultative evaluation of the claimant. *Tr. 30-33, 292-298.* She considered Dr. Cerwonka's opinion based on the objective findings that the claimant exhibited: euthymic mood, no signs of untoward anxiety, good attention and concentration, denied hallucinations or delusions, thinking was organized and goal directed, no intellectual limitations or cognitive deficits that would prevent working, displays much greater abilities in his perceptual reasoning, displays much greater abilities in his perceptual reasoning, able to understand, retain, and follow instructions and was able to sustain enough contraction and attention to perform both simple and somewhat more complex tasks, and able to relate well to others on a one-on-one basis. *Tr. 33*. The ALJ, however, rejected Dr. Cerwonka's conclusion that the clamant "could perform some type of full-time work." Dr. Cerwonka's statement as to the claimant's ability to perform work was rejected because that issue is

reserved to the Commissioner. Accordingly, his opinion was only partially considered and was thereby given "partial weight." *Tr. 33*.

### G. Evaluation of the Claimant's Residual Functional Capacity

The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. C*hambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Based on the foregoing medical evidence, the ALJ found that the claimant had moderate difficulties in social function and his concentration, persistence or pace. Accordingly, in the Residual Functional Capacity, the ALJ limited the claimant to jobs requiring unskilled work, with no more than occasional changes in work settings, and no more than occasional interaction with co-workers, supervisors, or the public. *Tr. 35*. The claimant does not contend that the ALJ made an improper RFC assessment or that substantial evidence does not support the RFC. Rather, he

argues that the ALJ erred in her analysis of the medical opinions. The Court finds, however, that substantial evidence supports the ALJ allocation of the weight given to the various physicians in this case and the resultant RFC.

**Conclusion**

Given the foregoing, it is the conclusion of this Court that the decision of the Commissioner be AFFIRMED and this matter be dismissed with prejudice.

**THUS DONE AND SIGNED** this 22nd day of January, 2019.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE